*The probate of an alleged nuncupative Will of* WILLIAM GWIN.

A MARINER made a nuncupative will on the Mississippi river, opposite Vicksburg.—Held, that the mariner was not "at sea," and the will rejected. The limits laid down by statute within which such wills can be maintained, will not be enlarged by construction.

THE SURROGATE. The petitioner, Mary Gwin, sets forth the death of her late husband, William Gwin, on the third day of January, 1863, on the Mississippi river, near Vicksburg, on board the United States Gunboat Benton, of which he was at the time commandant, he being an officer in the United States naval service. She alleges that before his death he made a nuncupative will of personal estate; and sets forth the substance thereof in her petition. The prayer is for probate of this alleged will.

It is the duty of the Surrogate to issue a citation in any case where the petition shows on its face that jurisdiction probably exists.

The Revised Statutes have given the privilege of making this species of testamentary disposition to "soldiers while in active service, and mariners while at sea." There can be no doubt that the decedent was a mariner. This term applies to every person in the naval or mercantile service, from the common seaman to the captain or admiral. (*Morrell* v. *Morrell*, 1 *Hagg.*, 51; *In the Goods of Hayes*, 2 *Curteis*, 338.) A cook on board a steam ship has been held to be a mariner. (*In re Thomson*, 4 *Brad.*,

159.) And so the purser of a man of war. (*Williams on Ex'rs*, 103, and cases cited.)

But being a mariner, was he a "mariner at sea?" A mariner on shore has no rights in making a will of his personalty superior to those of any other person. It is necessary to define the words "at sea," in their legal sense.

Waters within the ebb and flow of the tides are considered "the sea." (*Gilpin's R.*, 526.)

The definition of the word "sea" has been arrived at in cases in admiralty *in rem*, brought for seaman's wages, and it has been held that seamen cannot sue in the United States Courts, except where the service has been performed at sea, or upon waters within the ebb and flow of the sea. (*The Thomas Jefferson*, 10 *Wheaton*, 428; *Steamboat Orleans* v. *Phœbus*, 11 *Peters R.*, 175.)

In *Pegroux* v. *Howard* (7 *Peters*, 324), the Court held that New Orleans might be considered as within the ebb and flow of the tide sufficient to give jurisdiction, inasmuch as the ebb of the tide is felt there. And in *Thackeray* v. *Boat Farmer*, *Gilpin's R.*, *p.* 524, it was held that the Delaware river, opposite Philadelphia, was not "the sea."

In these decisions our courts have only followed those of England, where the term "the sea" has been defined with equal certainty by tribunals of ecclesiastical, admiralty and common law jurisdiction. There can be no phrase, the meaning of which is more definitely fixed, than that which we give to the great maritime pathway of travel and commerce.

In the case of the commander-in-chief of the British naval forces at Jamaica, who lived on shore at an official residence, with his family, it was held that he was not " at sea," and his nuncupative will denied probate. (*Earl of Easton* v. *Seymour*, 2 *Curteis*, 339; 3 *Curteis*, 530.)

Where a seaman, lying in the port of Buenos Ayres, had leave to go ashore, was there injured and died, he

was held by the English Court to have been "at sea," and his nuncupative will made *in extremis*, admitted. But this was a case where the decedent belonged to a sea-going ship and was upon a sea voyage. (*Goods of Lay*, 2 *Curt.*, 375.)

The construction of a statute depends upon the apparent intention of the law makers, to be collected from the general terms and context, and when that intention can be ascertained, it is the duty of all judicial officers to give effect to it. If a statute makes use of a word well known and having a definite meaning, it must be expounded in the sense in which it is defined and comprehended.

It is the policy of the laws of this State, to confer upon mariners being at sea, certain peculiar privileges in making testamentary dispositions of personal property. These privileges are given from the peculiar situation in which they are placed, in being separated from society, and not having the means of deliberately making a will with the formalities required of other citizens. But the statute strictly announces the circumstances under which this privilege can be enjoyed. It does not propose to confer it beyond the limits it has laid down. Nuncupative wills are at all times dangerous wills. With education and general information of legal rights, the necessity and the use of them is fast disappearing. And it is not the duty of a Probate Court of this day to endeavor to enlarge, by novel constructions and liberal ruling, the class of cases to which the written law of the land has confined these testamentary privileges.

There appearing to be no jurisdiction in this Court, a citation for probate is denied.